Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1428 | DATE | 8/6/2001 |
| CASE TITLE | Casio Computer Company vs. Joanne Noren | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Defendants' motion (49-1) to vacate default judgment is denied. Enter memorandum opinion and order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 0 6 2001 | |
| ✓ | Docketing to mail notices. | | date docketed | 62 |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 AUG -6 AM 11:33 | | |
| SLB | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
AUG 0 6 2001

| | |
|---|---|
| CASIO COMPUTER COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 00 C 1428 |
| v. ) | |
| ) | Judge George W. Lindberg |
| JOANNE NOREN, a/k/a JOANNE M. ) | |
| MARLOWE, and CHARIVARI CAPITAL ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants have moved to vacate this court's May 17, 2000 order entering a default judgment against them. For the reasons stated below, defendants' motion is denied.

On March 8, 2000, plaintiff filed its complaint. Defendant Charivari Capital Corporation ("CCC") is a corporation registered in Barbados, with its principal place of business in Barbados. Defendant Joanne Noren ("Noren") is an Illinois resident and is CCC's sole shareholder, director, and officer.[1] On March 9, 2000, Noren was personally served with a summons in this case at her Illinois residence.

Noren, acting pro se, then moved for an extension of time to answer or otherwise plead. On April 14, 2000, Noren appeared before this court and stated that she had consulted with an attorney but needed more time to retain counsel; CCC did not appear. This court granted Noren an extension to April 26, 2000 to answer the complaint, and warned her that CCC would be

---

[1] Noren is listed as "Joanne Marlowe" in CCC's Notice of Directors; there appears to be no dispute that Marlowe and Noren are the same person.

subject to a motion for default if it did not appear through counsel on that date. On April 26, 2000, Noren failed to appear, and failed to answer the complaint or otherwise plead; CCC again failed to appear. According to plaintiff, later that day Noren, accompanied by an attorney, attended a meeting at plaintiff's counsel's office.

On May 3, 2000, plaintiff moved for entry of a default judgment against both defendants. On May 15, 2000, Noren moved to hold this case in abeyance pending a determination in a New York proceeding. On May 16, 2000, the date noticed for plaintiff's motion for default judgment, neither Noren nor CCC appeared in court. On May 17, 2000, the date noticed for Noren's motion to hold this case in abeyance, Noren did appear; CCC did not. On that date, this court denied Noren's motion to hold this case in abeyance, and granted plaintiff's motion for default judgment against both defendants in the amount of $33.1 million, plus pre- and post-judgment interest and cost of suit. On July 11, 2000, an attorney entered his appearance on behalf of both defendants; this marks the first time CCC appeared in the case. On that date, defendants moved to vacate the default judgment.[2]

Defendants first contend that the default judgment entered against CCC should be vacated because CCC was improperly served. A default judgment may be vacated where it is void. Fed. R. Civ. P. 55(c), 60(b)(4). A judgment is void if it is entered against a defendant that has not been properly served. See Printed Media Servs., Inc. v. Solna Web Inc., 11 F.3d 838, 843 (8th Cir. 1993); Combs v. Nick Garin Trucking, 825 F.2d 437, 442 (D.C. Cir. 1987). Defendants claim that service on CCC was flawed for two reasons: first, that service failed to comport with

---

[2] Defendants filed an amended motion to vacate default judgment on May 25, 2001, and another amended motion to vacate default judgment on June 8, 2001.

2

the requirements of the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Convention"); and second, that the summons served on Noren was not specifically directed to CCC. Neither argument is persuasive.

Defendants first contend that service in Illinois on CCC, a Barbados corporation, was improper because it failed to comply with the requirements of the Hague Convention, which governs the service of process abroad. The Hague Convention, however, applies only where the forum state's law requires the transmittal of documents abroad as the applicable method of serving process. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 700 (1988). Illinois law does not require such a transmittal of documents abroad. See 735 ILCS 5/2-204. Accordingly, the Hague Convention does not apply in this case.

The next issue is whether service on CCC was proper under Federal Rule of Civil Procedure 4. Under Rule 4(h)(1), service on a corporation must be effected either pursuant to the law of the state where the district court is located, or by delivering a copy of the summons and complaint to an officer, managing or general agent, or any other agent authorized by law to receive service of process. Similar to the federal law alternative, under Illinois law, a corporation is served by leaving a copy of process with its registered agent or "any officer or agent of the corporation found anywhere in the State." 735 ILCS 5/2-204.

On March 9, 2000, a summons was personally served on Noren at her residence in Wadsworth, Illinois. The summons was headed with the full case caption, and lists both CCC and Noren as defendants. The summons was directed to Noren without mention of her ownership of CCC or status as a corporate officer of CCC; nor does the affidavit of service indicate Noren's relationship to CCC. Defendants contend that the failure to specifically direct

3

the summons to CCC – essentially, to label Noren a corporate officer or agent – renders the service defective against CCC.

Plaintiff responds that this defect is merely a technical one, and should not defeat service. As the Seventh Circuit has stated, the "substantial compliance" doctrine relating to conformity with the requirements of Rule 4 is valid to the extent that it "prevent[s] a purely technical error in the form of the documents under Rule 4 from invalidating an otherwise proper and successful delivery of process." Mid-Continent Wood Products, Inc. v. Harris, 936 F.2d 297, 302 (7th Cir. 1991). Here, the delivery of process was proper and successful: the summons was served on Noren, who is the sole shareholder, director, and officer of CCC. CCC has offered no evidence that it was prejudiced by the failure of the summons to label Noren's various positions with CCC. Plaintiff has complied with Rule 4 by serving an officer of CCC.

Defendants next argue that the default judgment entered against both defendants should be set aside based on their "reasonable" presumption that this court would either stay these proceedings pending a determination in the New York litigation, or would grant defendants additional time to answer or otherwise plead. Although defendants do not specify the ground in Rule 60(b) on which they base this argument, the basis would appear to be either mistake or excusable neglect, under Rule 60(b)(1). Defendants bear the burden of showing: (1) good cause for the default; (2) that they took quick action to correct it; and (3) a meritorious defense to the complaint. Jones v. Phipps, 39 F.3d 158, 162 (7th Cir. 1994). The application of this test to a motion to vacate a default judgment, as compared to a motion to vacate a simple default, is "much more limited and stringent," and "requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing [the judgment]." Id.

4

Defendants claim "good cause" based on the fact that neither had legal representation until after the judgment was entered. The court does not find this justification persuasive. As a corporation, of course, CCC could only appear by counsel. See Strong Delivery Ministry Ass'n v. Board of Appeals, 543 F.2d 32, 33-34 (7th Cir. 1976). While it is true that pro se litigants are given leeway that represented litigants are not, a litigant's pro se status does not provide an exemption from procedural rules or court-imposed deadlines. Jones, 39 F.3d at 163. CCC and Noren were represented by counsel for two years in litigation in New York, and thus had some access to legal representation. Moreover, on April 14, 2000, Noren informed the court that her New York attorneys had cautioned her to expect to be sued in Chicago, and she stated that she had consulted with her New York counsel regarding this case. This court gave Noren an extension of time to allow her to retain counsel, as she requested. Since the March 29, 2000 deadline for answering the complaint had long since passed, entry of default against CCC would have been appropriate on April 14. Instead, this court essentially also granted CCC additional time to obtain counsel and appear, by warning Noren that CCC would be subject to a default judgment if it failed to appear on the following court date of April 26, 2000. Defendants still failed to answer or otherwise plead to the complaint.

Noren asserts that she mistakenly believed that her motion to stay the proceedings constituted a pleading responsive to the complaint, and that she further mistakenly believed that this court would either grant her requested stay or allow her additional time to answer the complaint. This court had already given Noren an extension of time, and hardly gave the impression that in the future it would be receptive to a request to halt these proceedings, or that it would freely dispense continuances and grant Noren an unlimited amount of time to get her

affairs in order. Nevertheless, the court recognizes that a pro se litigant might not appreciate what types of documents are responsive to a complaint. See Bermeo v. Polish With Panache Mareva's, Inc., 2000 WL 1141571 at *2 (N.D. Ill. 2000) (citing Lorenzen v. Employees Retirement Plan of the Sperry and Hutchinson Co., Inc., 896 F.2d 228, 232 (7th Cir. 1990) for the proposition that plausible misconstructions of the law or rules may constitute excusable neglect).

But even if Noren's mistaken belief constituted good cause for her default, neither defendant adequately asserts a meritorious defense. In their motion to vacate the default judgment, defendants assert as a defense that this action would have been dismissed as duplicative of litigation in federal court in New York. That litigation alleged RICO violations and state law claims against these defendants and others based on the same facts that form the basis of the claims raised in this diversity case.[3] The New York case was dismissed on October 13, 2000 for failure to state a RICO claim; the district court declined to exercise supplemental jurisdiction over the state law claims. See Casio Computer Co. v. Sayo, 2000 WL 1877516 (S.D.N.Y. 2000).

In support of their contention that this constitutes a meritorious defense, defendants cite 735 ILCS 5/2-619(a)(3), an Illinois statute that provides for dismissal if "there is another action pending between the same parties for the same cause." They also cite Serlin v. Arthur Andersen & Co., 3 F.3d 221, 223 (7th Cir. 1993), for the proposition that "a federal suit may be dismissed 'for reasons of wide judicial administration...whenever it is duplicative of a parallel action already pending in another federal court.'" As a procedural state rule, 735 ILCS 5/2-619(a)(3) is inapplicable in this diversity action. See 28 U.S.C. § 1652; Erie R.R. Co. v. Tompkins, 304 U.S.

---

[3] Plaintiff does not allege a RICO claim in this case.

64 (1938); People ex rel. Lehman v. Lehman, 34 Ill. 2d 286, 290 (Ill. 1966) (characterizing the purpose of the section as "foster[ing] orderly procedure by preventing a multiplicity of actions) (emphasis added). In any event, what both 735 ILCS 5/2-619(a)(3) and Serlin have in common is a requirement that the parallel action be pending. Here, the parallel New York action which defendants contend mandates dismissal of this case was itself dismissed, and defendants do not argue that res judicata applies. Judicial economy would not be served by dismissing this case; this rule was intended to prevent duplicative litigation, not to prevent access to the courts.[4] The formerly pending New York litigation simply is not relevant.

Aside from this procedural argument, the only other statements in the motion for default judgment that could be construed as an assertion of a defense are Noren's statements in an affidavit attached to the motion that "in general, [I] believe that the allegations [in the complaint] are false," "[t]o the best of my recollection, neither I nor my said corporation [CCC] was ever in privity of contract with the Plaintiff," and "[t]o the best of my knowledge, certain other persons are responsible for the losses suffered by the Plaintiff." A meritorious defense requires more than such bare legal conclusions and general denials. See Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc., 28 F.3d 42, 46 (7th Cir. 1994).

Defendants argue in similar conclusory fashion in their reply brief that "the meritorious defense is based on Casio's very own negligent actions and on, information and belief, the conspiratorial actions of others who are not parties to this action," listing the names of five

---

[4] When the district court in New York dismissed that case, it noted that Noren (known as "Marlowe" there) had argued that New York was an improper venue for the action because she maintained an office in the Chicago area and was not a citizen of New York. Casio Computer Co., 2000 WL 1877516 at *29.

individuals. It is only in an affidavit attached to the reply brief that defendants offer any factual allegations. In that affidavit, Noren concentrates on attacking statements made in the affidavit of Isamu Matsushima that plaintiff used to prove up its damages. The only factual allegations in Noren's affidavit are her statements claiming that the Casio funds at issue were not transferred to Barclays Bank in New York, disputing the amount of the funds at issue, listing several transfers of funds through Noren and CCC, and denying any recollection of having executed a promissory note. It would be inappropriate to rely on factual assertions or arguments raised for the first time in a reply brief, since plaintiff has not had the opportunity to respond. See Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir. 1997), cert. denied, 522 U.S. 1116 (1998) (arguments raised for first time in appellate reply brief are waived); Black v. TIC Investment Corp., 900 F.2d 112, 116 (7th Cir. 1990) (reply brief on motion for summary judgment); Petri v. Gatlin, 997 F. Supp. 956, 977 (N.D. Ill. 1997) (reply brief on motion to dismiss). Even if defendants had properly alleged these facts in their motion to vacate the default judgment, however, defendants fail to say how these statements add up to a complete and meritorious defense to the complaint.

Finally, defendants failed to take sufficiently quick corrective action. Noren was present when this court entered the default judgment on May 17, 2000. It was not until nearly two months later, on July 11, 2000, that defendants moved to vacate the judgment. Defendants first failed to file an answer despite this court having granted additional time to do so, then delayed for almost two months before moving to vacate the judgment. This delay was simply too long. See Chandler Leasing Corp. v. UCC, Inc., 91 F.R.D. 81, 84 (N.D. Ill. 1981) (failure to file petition to vacate default until nearly two months after its entry constituted failure to take quick

8

action to correct default).

**ORDERED:** Defendants' motion to vacate default judgment is denied.

ENTER:

George W. Lindberg
United States District Judge

DATED: AUG 0 2 2001